IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DEVEARL L. BACON,                  :
                                   :
        Plaintiff,                 :
                                   :
    v.                             :    Civ. No. 06-254-JJF
                                   :
GOVERNOR RUTH ANN MINNER,          :
et al.,                            :
                                   :
        Defendants.                :

## MEMORANDUM ORDER

Plaintiff Devearl L. Bacon, ("Bacon"), an inmate at the Delaware Correctional Center ("DCC"), filed this civil rights action pursuant to 42 U.S.C. § 1983. He appears pro se and on April 27, 2006, was granted in forma pauperis status pursuant to 28 U.S.C. § 1915. (D.I. 3.) The Court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

For the reasons discussed below the complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1) as the claims are either frivolous or fail to state a claim upon which relief may be granted.

## I.    THE COMPLAINT

Plaintiff filed this seven count complaint against a multitude of defendants. He is housed in the medium high housing unit ("MHU") and many of his allegations concern his housing assignment and the conditions in that area. Count I is brought under an embezzlement theory. Plaintiff alleges that on June 9,

2002, he purchased from the commissary what he thought was a new television, only to later discover that it was used.  He alleges that in April 2004 Defendant C/O Morgan ("Morgan") confirmed that the television was used during the time she was taking inventory of DCC items.  Plaintiff filed a grievance stating that embezzlement had occurred in the prison and he wanted charges filed against the individuals responsible.  He alleges that the grievance board did not deny that used televisions were sold to inmates as new, but he was not refunded any money nor did he receive an apology.

Count II of the complaint is entitled "Sexual, Racial Discrimination, Conspiracy, Harassment."  Plaintiff alleges that on May 15, 2004, on behalf of the female African American correctional officers and nursing staff, he filed a grievance against the DCC white male correctional officers for racial and sexual discrimination.  Plaintiff alleges that he has suffered "from watching the deprivations upon African American females."

Count III alleges that Plaintiff was a victim of sexual harassment when on December 19, 2005, Defendant Sgt. T. Drace ("Drace"), performed a pat-down search that Plaintiff describes "was sexually done."  Plaintiff filed a grievance and asked that sexual harassment charges be filed against Drace.  Plaintiff alleges that he was told by the grievance board that it did not have the authority to award him pain and suffering and that it

-2-

could not press charges against Drace.  Plaintiff seeks "joinder for claims on behalf of inmates who have been sexually harassed."

Count IV of the complaint raises the issue of the institutional classification system and is entitled, "Racial Profiling, Discrimination, Cruel and Unusual Punishment, Double Jeopardy, Violation of Due Process - Protected Liberty Interest; Fairness, and Failure of Adequate Notice."  More particularly, Plaintiff alleges that he arrived in MHU in 2002, but that without notice, in January 2003, the recreation time for the upper and lower decks was "cut in half" and the tiers were given exercise at a different time.  He also alleges that recreation remained the same for inmates housed on the compound and at other Delaware prisons.

Plaintiff next alleges that he was not given a copy of the policy for classification.  He alleges that the classification policy criteria is changed frequently and that the changes were made simply to keep the MHU and Security Housing Unit ("SHU") buildings full.  Plaintiff further alleges that the policy changes resulted in double jeopardy because he was assigned points against his housing assignment from a prior violation that had resulted in a sanction of 45 days in lockdown.  Plaintiff also alleges that because of the criteria changes, it is more difficult for African American inmates to leave the MHU and SHU buildings as the majority of the inmates affected by the changes

are African American.  Plaintiff alleges this is racial profiling
and race discrimination because the "Black majority inmate's 'who
are being profiled', have no counselor of their own color to
relate problems and backgrounds."  Plaintiff alleges that the
younger the inmate, the higher points received.  He concludes
this practice is profiling because the majority of African
American males are not getting a fair chance like other races,
and they are faced with more difficulty than other races.

Plaintiff next alleges that in July 2004, inmates were moved
to another building without notice, and later on September 7,
2004, without notice, the inmates were placed in lockdown from
Tuesday through Thursday evening.  He also alleges that on
September 7, 2004, the conditions became harsher, and again
without notice, recreation changed from one hour every other day
to two hours per week.

In Count V Plaintiff alleges that there are insufficient
jobs and groups and that because of this, inmates housed in MHU
and SHU have no hope of getting their point total down for
transfer to a different housing unit.

Count VI alleges a "Violation of Due Process, Inadequate
Grievance Board, Right to Access."  Plaintiff alleges that after
he filed a number of grievances he was sent a memorandum stating
that he had been nominated for the position of inmate grievance
representative, and he was requested to respond to the notice by

-4-

June 1, 2004.  Plaintiff alleges this notice is evidence that grievances filed prior to or during the time the board "was put together meant that there never was a grievance board in the first place."  According to Plaintiff, this violated his right to due process and he had a right to have an adequate grievance procedure.

Finally, Count VII is brought as a conditions of confinement claim.  Plaintiff alleges that the DCC's practice of turning on very bright lights in MHU and SHU at 8:30 a.m., turning them off at 11:30 p.m., turning them on again for distribution of medication and breakfast, and then leaving them on for a lengthy period of time, is a use of the lights as a tool for punishment.  Plaintiff alleges that the correctional officers know inmates housed in MHU and SHU do not have control of the lights, and that the inmates do not like the bright lights on for long periods of time.

Plaintiff asks that the matter proceed as a class action, that he be deemed the class representative, that $270,000,000 be awarded in damages, and for commutation of each individual's sentence.

## II.  STANDARD OF REVIEW

When a litigant proceeds in forma pauperis, 28 U.S.C. § 1915 provides for dismissal under certain circumstances.  When a prisoner seeks redress from a government defendant in a civil

action or when a prisoner challenges prison conditions 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c)(1) provide for screening of the complaint by the Court.  These three statutes provide that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief.

Pro se complaints are liberally construed in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-521 (1972).  The Court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)).  An action is frivolous if it "lacks an arguable basis either in law or in fact,"  Neitzke v. Williams, 490 U.S. 319, 325 (1989), and the claims "are of little or no weight, value, or importance, not worthy of serious consideration, or trivial."  Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995).  Additionally, a pro se complaint can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines v. Kerner, 404 U.S. 519, 520-521 (1972)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## III. ANALYSIS

### A.    Sale of Used Television

In Count I, Plaintiff alleges his constitutional rights were violated when he purchased from the commissary what he believed to be a new television, only to later discover that it was used. To state a claim under 42 U.S.C. § 1983 a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff's allegations in Count I do not rise to the level of a constitutional violation. At the most it might be said that Plaintiff was a victim of misrepresentation. This is not a constitutional violation and claims of this type are more appropriately filed in state court.

As currently presented, Count I of the complaint does not allege a constitutional violation. Therefore, it is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### B.    Sexual/Racial Discrimination of Female Correctional Officers and Nursing Staff

In Count II, Plaintiff attempts to raise a sex and race discrimination claim on behalf of the female African American correctional officers and nursing staff at DCC. Plaintiff, however, has no standing to bring such a claim.

-7-

"The 'core component'" of the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." DaimlerChrysler Corp. v. Cuno, – U.S.–, 126 S.Ct. 1854, 1861 (2006)(citations omitted). "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). Also, "a plaintiff must demonstrate standing separately for each form of relief sought." DaimlerChrysler Corp., 126 S.Ct. at 1867 (citations omitted).

Here, Plaintiff alleges that female African American correctional officers and nursing staff are the victims of sex and race discrimination as a result of the actions of Defendants. The Third Circuit determines the appropriateness of third-party standing with a three part test. Nasir v. Morgan, 350 F.3d 366, 376 (3d Cir. 2003) (citations omitted). "To successfully assert third-party standing: (1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a 'close relationship'; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." Id.

Here, Plaintiff alleges an injury in that he has "suffered" in watching the deprivations upon African American females. However, there are no allegations in the complaint that Plaintiff

has a close relationship with the female African American

correctional officers and nursing staff.  Nor has he alleged that

these women face some obstacle to pursuing their own claims.

Count II is frivolous, and is therefore dismissed pursuant

to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### C.    Sexual Harassment

Plaintiff alleges in Count III of the complaint that he was

the victim of sexual harassment when he was subjected to a

"sexual" pat-down search by Drace.  Allegations of sexual

harassment of a prisoner by a corrections officer may state an

Eighth Amendment claim under § 1983 so long as two elements are

met.  See Walker v. Taylorville Corr. Ctr., 129 F.3d 410, 414

(7th Cir. 1997); Mathie v. Fries, 121 F.3d 808 (2d Cir. 1997);

Freitas v. Ault, 109 F.3d 1335, 1338-39 (8th Cir. 1997); Boddie

v. Schnieder, 105 F.3d 857 (2d Cir. 1997).  The objective element

requires severe or repetitive sexual abuse of an inmate by a

prison officer.  Harris v. Zappan, No. CIV A 97-4957, 1999 WL

360203, at *4 (E.D. Pa. May 28, 1999) (citation omitted).  The

subjective element is whether the official had a sufficiently

culpable state of mind.  Id. (citation omitted).  However, a

single isolated incident of sexual harassment that is not in and

of itself severe, is not sufficiently serious to satisfy the

objective component of an Eighth Amendment claim.  See Boddie,

105 F.3d at 857 (male prisoner's allegations that female officer

touched his penis and said, "[Y]ou know your [sic] sexy black devil, I like you," later bumped into him, and pressed her whole body against his body were not sufficiently serious to satisfy the objective component); Berryhill v. Schriro, 137 F.3d 1073 (8th Cir. 1998) (male inmate's claims that two officers grabbed his buttocks for a moment did not meet the objective component of Eighth Amendment); see also Wright v. O'Hara, No. CIV.A. 00-1557, 2004 WL 1793018, at *7 (E.D.Pa. Aug. 11, 2004).

Here, Plaintiff alleges one isolated incident where he was allegedly touched in a sexual manner without his consent during a pat-down search. The allegations do not allege conditions that are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. Accordingly, Count III is dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### D.    Classification/Housing

In Counts IV and V Plaintiff raises a number of claims relating to his classification and housing assignment in MHU. Plaintiff alleges that the classification policy changes frequently and without notification to inmates, making it difficult for prisoners to achieve reassignment to a lower security housing unit. Plaintiff also alleges that the criteria changes result in "double jeopardy" since he is assigned points that count against his housing assignment for a prior violation

that had resulted in a sanction of 45 days in lockdown.  He
alleges that the classification procedures result in "racial
profiling" because the majority of inmates affected by the
changes are young and African American, and the changes make it
more difficult for an inmate to leave the MHU and SHU buildings.
Plaintiff alleges that because there are insufficient jobs and
programs in MHU and SHU, inmates housed there have no hope of
reducing their point total for transfer to a different housing
unit.  Finally, Plaintiff complains that after his arrival at
MHU, the recreation time was cut in half and the time for
recreation changed, without notice.  He alleges that later, in
September 2004, when inmates were placed in lockdown for a two
day period, the conditions became harsher and recreation time was
reduced.

### 1.   Classification/Housing/Jobs/Programs

Plaintiff takes exception with the point based classifica-
tion system utilized by the Delaware DOC.  He complains that the
criteria changes frequently, and because he is housed at MHU
where jobs are few and no programs are offered, it is difficult
to obtain the correct point total for a transfer out of MHU.

To be determined is whether the alleged violations implicate
a constitutionally protected property or liberty interest.  See
Sandin v. Conner, 515 U.S. 472 (1995).  "Liberty interests
protected by the Fourteenth Amendment may arise from two sources

-11-

- the Due Process Clause itself and the laws of the States."
Hewitt v. Helms, 459 U.S. 460, 466 (1983).  In a prison setting,
states may create protected liberty interests.  These interests
will be generally limited to freedom from restraint which, while
not exceeding the sentence in such an unexpected manner as to
give rise to protection by the Due Process Clause of its own
force, nonetheless imposes atypical and significant hardship on
the inmate in relation to the ordinary incidents of prison life.
Sandin, 515 U.S. at 484 (internal citations omitted).

Under Delaware law neither a prisoner's classification,
housing assignment, work assignment, drug treatment program, nor
a rehabilitation program is a protected interest.  Indeed,
Delaware law and DCC regulations do not create a liberty interest
in a prisoner's classification within an institution.  See Del.
Code Ann. tit. 11, § 6529(e).  Delaware law does not require the
DOC to maintain a classification system, and as a result, the
State has not created a protectable interest in classifications.
Munir v. Kearney, No. Civ. 03-305-SLR, 2005 WL 1075287, at *5
(D.Del. Apr. 29, 2005) (citing Del. Code Ann. tit. 11, § 6529;
Nicholson v. Snyder, No. 00-588-SLR, 2001 WL 935535, at *5
(D.Del. Aug. 10, 2001), aff'd in part and vacated in part, 2005
U.S.App. LEXIS 2078 (3d Cir. 2005)).  Moreover, prisoners have no
entitlement to a specific job, or even to any job.  James v.
Quinlan, 866 F.2d 627, 630 (3d Cir. 1989).  And, Delaware law

-12-

does not create a liberty or property interest for prisoners in their work assignments. Clough v. State, 686 A.2d 158, 159 (Del. 1996). Further, inmates have no constitutional right to drug treatment or other rehabilitation. Abdul-Akbar v. Department of Corrections, 910 F.Supp. 986, 1002 (D.Del. 1995). Moreover, it has been determined that the transfer of a prisoner from one classification is unprotected by "'the Due Process Clause in and of itself,"' even though the change in status involves a significant modification in conditions of confinement. Hewitt, 459 U.S. at 468 (citation omitted); Moody v. Daggett, 429 U.S. 78 (1976); Brown v. Cunningham, 730 F.Supp. 612 (D.Del. 1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest). Notably, "'[a]s long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."' Hewitt, 459 U.S. at 468 (quoting Montanye v. Haymes, 427 U.S. 236, 242 (1976)).

Plaintiff has no property or liberty interest in the classification program, his housing assignment, or the availability of jobs or program. Nor can Plaintiff's assignment

-13-

to MHU housing be viewed as falling outside the scope of "the sentence imposed upon him [or] otherwise violative of the Constitution."  Accordingly, the claims of constitutional violations based upon the classification program, his housing assignment, or the availability of jobs or program have no arguable basis in law or in fact.  They are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### 2.   Double Jeopardy

Plaintiff argues that by using prior disciplinary violations and sanctions as a basis for classification, he has been subjected to double jeopardy.  A prison disciplinary hearing is not a "prosecution" under the Double Jeopardy Clause.  United States v. Newby, 11 F.3d 1143, 1144 (3d Cir. 1993) (citing United States v. Stucky, 441 F.2d 1104 (3d Cir. 1971)).  As a result, a prisoner may be disciplined for violating a prison regulation in order to maintain institutional order, and subsequently be prosecuted for the same criminal conduct.  Id.  It stands to reason that since there is no double jeopardy violation when prosecuting a prisoner subsequent to his institutional discipline for the same prison infraction, there is no constitutional violation when using prior disciplinary actions as a basis for classifying a prisoner to his security level.  Newby, 11 F.3d at 1144; Hamilton v. Civigenics, No. Civ.A. 03-826 GMS, 2005 WL

-14-

418023 (D.Del. Feb. 22, 2005); Seawright v. Snyder, No. Civ. 02-083-KAJ, 2004 WL 2662879 (D.Del. Nov. 16, 2004).

Consequently, Plaintiff's double jeopardy claim has no arguable basis in law or in fact, and is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### 3.    **Race Discrimination.**

Plaintiff makes the conclusory allegation that racial profiling occurs because the majority of the inmates affected by the classification criteria changes are African American. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to raise a valid equal protection claim, a plaintiff must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  To demonstrate a violation of the Equal Protection clause, a plaintiff must show more than discriminatory impact.  See Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977).  "[A] official act is not unconstitutional solely because it has a racially disproportionate impact." Williams v. Federal Bureau of Prisons and Parole Comm'n, No. 00-1986, 85 Fed.Appx. 299, 305 (3d. Cir. 2004) (citations omitted).

Plaintiff posits that the classification system was changed because there are many young African Americans in MHU and SHU. He argues that the younger the inmate, the higher the point assignment.  He then alleges in a conclusory manner, that the point assignment results in the profiling of the African American majority inmates.

The allegations in the complaint are not that any alleged discrimination is the result of intentional or purposeful discrimination.  Rather, the allegations are that because the majority of the inmates in MHU and SHU are African American, the classification point system adversely affects them.  An official act, however, is not unconstitutional solely because it has a racially disproportionate impact.

Based upon the foregoing analysis, Plaintiff has failed to state a cause of action upon which relief may be granted. Therefore, the claim of racial discrimination is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### 4.  Recreation

Plaintiff alleges that in January 2003, without notice, the recreation time MHU was "cut in half" and exercise was provided at a different time.  He further alleges, that in September 2004, the cells were on lockdown for a two day period and again, without notice, recreation changed from one hour of recreation every other day to two hours per week.  This is essentially a

conditions of confinement claim.

The denial of exercise or recreation can result in a constitutional violation. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)); see also Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) ("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation"); Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983); Loe v. Wilkinson, 604 F.Supp. 130, 135 (M.D.Pa. 1984).

However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." Spain, 600 F.2d at 199. Hence, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.

Here, plaintiff does not allege that he was deprived of exercise for prolong periods of time. Nor does he allege tangible physical harm resulting from lack of exercise. He alleges only a change in the length of time and the time the recreation occurred, and that this was done without notice to him.

-17-

The claim alleging a constitutional violation has no basis in law or fact.  Accordingly, it is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1).

**E.    Due Process**

In Count VI Plaintiff alleges a violation of his right to due process.  More particularly, he alleges in a conclusory fashion, that a notice advising him that he had been nominated for the position of inmate grievance representative, and that requested he respond by June 1, 2004, is evidence that there was never a grievance board for grievances filed prior to or during the date of the notice.  According to Plaintiff, this violated his right to due process as he had a right to have an adequate grievance procedure.

A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980);  Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir.1978)).  Plaintiff alleges that he was deprived of his right to have an adequate grievance procedure.  The complaint does not, however, contain sufficient information to apprise each Defendant of the action or inaction that allegedly violated Plaintiff's constitutional rights.  Plaintiff refers to the

grievance procedure in general, but does not indicate when he was deprived of the right to an adequate grievance procedures or what Defendant allegedly deprived him of that right.

Additionally, although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances.  Booth v. King, 346 F.Supp.2d 751,761 (E.D.Pa. 2004); see also Bounds v. Smith, 430 U.S. 817, 821 (1977).  This is because inmates do not have a constitutionally protected right to a grievance procedure. Burnside v. Moser, No. 04-4713, 138 Fed.Appx. 414, 415(3d Cir. 2005).  Nor does the existence of a grievance procedure confer prison inmates with any substantive constitutional rights. Hoover v. Watson, 886 F.Supp. 410, 418-419 (D.Del.), aff'd 74 F.3d 1226 (3d Cir. 1995).

Plaintiff has no constitutional right to a grievance procedure.  Further, the due process claim fails to allege actions that rise to the level of a constitutional violation. Therefore, Plaintiff's procedural due process claim is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

**F.    Conditions of Confinement**

Count VII alleges that after Plaintiff had been housed in MHU for two years, the pattern of lighting was changed.

-19-

Originally the lights were turned on when sunlight was not
visible and turned off at 11:00 p.m.  Plaintiff alleges that the
lighting time was changed without notice and the lights are now
turned on at 8:30 a.m. and turned off at 11:30 p.m.  Plaintiff
further alleges that the lights are very bright and that after a
time they begin to "burn".  He alleges that the inmates do not
like the bright lights on for long periods and that the lights
are used as tools for punishment.  He also alleges that the
lights are turned on at different times during the night to
dispense medication and to distribute breakfast.  Plaintiff
alleges that on those occasions, the lights are left on for an
unnecessarily length of time, that the inmates are left without
control of the lights, and they are at the mercy of the
correctional officers' discretion.

A condition of confinement violates the Eighth Amendment
only if it is so reprehensible as to be deemed inhumane under
contemporary standards or such that it deprives an inmate of
minimal civilized measure of the necessities of life.  See Hudson
v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S.
294, 298 (1991).  When an Eighth Amendment claim is brought
against a prison official it must meet two requirements: (1) the
deprivation alleged must be, objectively, sufficiently serious;
and (2) the prison official must have been deliberately
indifference to the inmate's health or safety.  Farmer v.

<u>Brennan</u>, 511 U.S. 825, 834 (1994). Deliberate indifference is a
subjective standard in that the prison official must actually
have known or been aware of the excessive risk to inmate safety.
<u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 125 (3d Cir. 2001).

Here, Plaintiff has failed to alleges facts showing either
that Defendants' conduct towards him was objectively harmful
enough to constitute a violation of the Eighth Amendment or that
prison officials acted with deliberate indifference towards him.
The claim alleging a constitutional violation based upon
conditions of confinement has no basis in law or fact.
Accordingly, it is dismissed as frivolous pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii) and § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

## IV.  CLASS ACTION

Plaintiff asks that this matter proceed as a class action
and that he be allowed to represent the "total class." A class
action can only be maintained if the class representative "will
fairly and adequately represent the interests of the class."
Fed.R.Civ.P. 23(a)(4). "When confronting such a request from a
prisoner, courts have consistently held that a prisoner acting
<u>pro</u> <u>se</u> 'is inadequate to represent the interests of his fellow
inmates in a class action."' <u>Maldonado v. Terhune</u>, 28 F.Supp.2d
284, 299 (D.N.J. 1998) (citing <u>Caputo v. Fauver</u>, 800 F.Supp. 168,
170 (D.N.J. 1992)). Accordingly, Plaintiff may not maintain this
suit as a class action and his request is denied.

**V.    CONCLUSION**

NOW THEREFORE, at Wilmington this _17_ day of July, 2006, IT IS HEREBY ORDERED that:

1.    The complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1),and 42 U.S.C. § 1997e(c)(1) as the claims are either frivolous or fail to state a claim upon which relief may be granted.  Amendment of the complaint would be futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002); Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d. Cir. 1976).    2.    Plaintiff is not required to pay any previously assessed fees or the $350.00 filing fee.


UNITED STATES DISTRICT JUDGE